1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CESARE REDMOND,

11             Plaintiff,                 No. CIV S-07-0021 MCE EFB P

12        vs.

13   W.A. RODRIGUEZ, et al.,

14             Defendants.         <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  Plaintiff proceeds on his December 20, 2007 amended complaint on his claims

18   that defendants Rodriguez and Valadez ("defendants") delayed and/or denied him medical

19   treatment for his asthma, and were thus deliberately indifferent to his serious medical needs in

20   violation of the Eighth Amendment.  Dckt. Nos. 16, 24.  On October 15, 2010, defendants filed a

21   motion for summary judgment.  Dckt. No. 50.  Thereafter, plaintiff filed an opposition and

22   defendants filed a reply.  Dckt. Nos. 54, 55.  For the reasons explained below, the court

23   recommends that defendants' motion be denied.

24   ////

25   ////

26   ////

1    **I.        Summary Judgment Standards**

2           Summary judgment is appropriate when there is "no genuine dispute as to any material

3    fact and [ ] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

4    Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the

5    facts relevant to the determination of the issues in the case, or in which there is insufficient

6    evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*,

7    523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw.*

8    *Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a

9    summary judgment motion asks "whether the evidence presents a sufficient disagreement to

10   require submission to a jury or whether it is so one-sided that one party must prevail as a matter

11   of law.

12          The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

13   or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

14   "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

15   trial.'"  *Matsushit*a, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on

16   1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the

17   initial responsibility of presenting the basis for its motion and identifying those portions of the

18   record, together with affidavits, if any, that it believes demonstrate the absence of a genuine

19   issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th

20   Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the

21   burden then shifts to the opposing party to present specific facts that show there is a genuine

22   issue for trial.  Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Auvil v.*

23   *CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

24          A clear focus on where the burden of proof lies as to the factual issue in question is

25   crucial to summary judgment procedures.  Depending on which party bears that burden, the party

26   seeking summary judgment does not necessarily need to submit any evidence of its own. When

the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). *Id*. at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law, *id.*, which here involves the question of whether the defendants were deliberately indifferent to serious medical needs of the plaintiff. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in

question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See Anderson*, 477 U.S. at 249, 255;  *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  If the evidence presented and any reasonable inferences that might be drawn from it could not support a

1   judgment in favor of the opposing party, there is no genuine issue.  *Celotex Corp. v. Catrett*, 477

2   U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that

3   is determinative of the outcome of the case.

4          On February 25, 2010, the court advised plaintiff of the requirements for opposing a

5   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154

6   F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v.*

7   *Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

8   **II.    Legal Standard for Eighth Amendment Claim**

9          To state a section 1983 claim for violation of the Eighth Amendment based on inadequate

10   medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate

11   indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  To prevail,

12   plaintiff must show both that his medical needs were objectively serious, and that defendant

13   possessed a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991);

14   *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992).  A serious medical need is one that

15   significantly affects an individual's daily activities, an injury or condition a reasonable doctor or

16   patient would find worthy of comment or treatment, or the existence of chronic and substantial

17   pain.  *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other*

18   *grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).

19          Deliberate indifference may be shown by the denial, delay or intentional interference

20   with medical treatment or by the way in which medical care is provided.  *Hutchinson v. United*

21   *States*, 838 F.2d 390, 394 (9th Cir. 1988).  To act with deliberate indifference, a prison official

22   must both be aware of facts from which the inference could be drawn that a substantial risk of

23   serious harm exists, and he must also draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837

24   (1994).  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious

25   harm and disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847.  "[I]t

26   is enough that the official acted or failed to act despite his knowledge of a substantial risk of

1   serious harm." *Id.* at 842.  A physician need not fail to treat an inmate altogether in order to

2   violate that inmate's Eighth Amendment rights.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314

3   (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some

4   treatment is prescribed, may constitute deliberate indifference in a particular case.  *Id.*  However,

5   it is important to differentiate common law negligence claims of malpractice from claims

6   predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment.

7   In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not

8   support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.

9   1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th

10  Cir. 2004).  Mere differences of opinion concerning the appropriate treatment cannot be the basis

11  of an Eighth Amendment violation.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996);

12  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

13  **III.    Undisputed Facts**

14          The following facts are not disputed by either party or following the court's review of the

15  evidence submitted, have been determined to be undisputed.

16          At all times relevant to this action, plaintiff was a prisoner in the custody of the

17  California Department of Corrections and Rehabilitation at California State Prison, Solano,

18  where defendant Rodriguez was employed as a Facility Captain and defendant Valadez was

19  employed as an Associate Warden.  Defs.' Mot. for Summ. J. ("Defs.' MSJ"), Stmt. of Undisp.

20  Facts in Supp. Thereof ("SUF") 1, 3; Defs.' MSJ, Ex. A ¶ 1; Pl.'s Opp'n to Defs.'s MSJ

21  ("Opp'n") at 11.

22          Defendants served as committee members on California State Prison, Solano's

23  Administrative Segregation Unit Institutional Classification Committee ("Classification

24  Committee").  SUF 4, 5; Opp'n at 11.  As members of the Classification Committee, defendants'

25  duties consisted of informing inmates about their due process rights, appeal rights, and housing

26  assignments, as well as answering inmates' procedural questions.  SUF 6; Opp'n at 11.  The

committee members are not medical professionals and have no medical training.  Accordingly, if during a Classification Committee hearing an inmate raises a concern regarding his medical condition, or obtaining appropriate medical care, all the committee members can do (absent an obvious medical emergency) is inform the inmate of the procedure for requesting medical care – by either verbally requesting medical care from a correctional officer or submitting a request for interview form to a correctional officer and/or medical staff.  SUF 7; Opp'n at 11-12.

Correctional officers personally check on each inmate housed in administrative segregation at California State Prison, Solano at least four times a day to: (1) provide each inmate with breakfast and lunch; (2) collect each inmate's breakfast trash; (3) provide each inmate with dinner; and (4) count each inmate.  SUF 9; Opp'n at 12.  If any inmate in administrative segregation is in need of medical attention, they have at least four opportunities per day to request medical care from a correctional officer.  SUF 10; Opp'n at 12.

From March 15 through March 21, 2005, plaintiff was housed in administrative segregation at California State Prison, Solano.  SUF 11; Opp'n at 13.  During that time period a correctional officer came by plaintiff's cell at least four times per day.  SUF 12; Opp'n at 13.  On March 17, 2005, plaintiff appeared at a Classification Committee hearing where defendants served as committee members.  SUF 14; Opp'n at 14.  At the hearing, plaintiff complained to defendants about experiencing asthma attacks.  SUF 15; Opp'n at 13.

**IV.   Discussion**

The claim pressed by plaintiff is an allegation of deliberate indifference to his episodes of breathing difficulty due to his asthma in violation of his Eighth Amendment rights.  Defendants move for summary judgment on the grounds that: (1) defendants took reasonable measures to abate the risk of harm to plaintiff and plaintiff did not sustain an injury; (2) defendants' actions did not cause plaintiff to receive inadequate medical care; and (3) defendants are entitled to qualified immunity.

////

7

1        In their first argument, defendants assert that they took reasonable measures to abate the

2    risk of harm to plaintiff.  Defs.' MSJ, Mem. of P. & A. in Supp. Thereof ("Defs.' P. & A.") at

3    4-6.  They note that as a threshold matter they are not medical professionals and did not make

4    medical decisions but rather served on a committee that made classifications decisions.

5    Defendants testify that every time they have served at a Classification Committee hearing where

6    an inmate raised a concern regarding medical care, they have informed the inmate of the

7    procedure for requesting medical care – that is, by verbally requesting medical care from a

8    correctional officer or submitting a request for interview form to a correctional officer and/or

9    medical staff.  Defs.' MSJ, Ex. A ¶ 7, Ex. B ¶ 7.  Accordingly, defendants contend that after

10   learning of plaintiff's asthma problems at the March 17th hearing, they advised him of the

11   procedures for requesting medical care, which reasonably abated the risk of serious harm to him.

12   Defs.' P. & A. at 5.

13       Plaintiff disputes defendants' version of what transpired at the March 17th hearing.  He

14   submits evidence that at the hearing, it was evident that he could barely speak and was having

15   difficulty breathing.  Pl.'s Opp'n, Decl. of Pl. in Supp. Thereof ("Pl.'s Decl.") ¶ 5.  Plaintiff

16   testifies that he informed defendants he was having an asthma attack, and that his earlier requests

17   for medical attention had gone unanswered.[1]  Id.  Plaintiff also denies being advised by

18   defendants of the procedures for obtaining medical care.  Id., ¶ 6.  Rather, plaintiff states that

19   defendants minimized his breathing problems and ridiculed him because his mother had

20   contacted the prison, worried about plaintiff's medical needs.  Id., ¶ 7.  Plaintiff states that he did

21   not receive any medical attention until March 21, 2005.  Id. ¶ 8.

22

23            [1] In their reply brief, defendants argue the court should disregard plaintiff's evidence that
     he suffered an asthma attack at any point between March 17 and 21, 2005.  Defs' Reply to Opp'n
24   at 2 ("Reply").  Defendants argue that Exhibit F to their motion, a March 21, 2005 medical
     record, contradicts statements in plaintiff's declaration that he suffered multiple asthma attacks
25   between March 17 and 21, 2005.  Id. at 2.  As discussed below, the March 21st medical record is
     ambiguous and thus, does not require that the court disregard the statements in plaintiff's
26   declaration.

1    There plainly is a factual dispute as to what occurred at the meeting and, perhaps after.

2    Given the differing accounts as to how defendants responded to plaintiff's complaints of asthma

3    at the March 17th hearing, the court finds that there is a dispute as to whether defendants took

4    reasonable measures to abate the risk of harm to plaintiff.  While a reasonable jury might well

5    accept as true the defendants' version, it might instead credit plaintiff's version.  Whose

6    testimony is to be believed is for the fact finder to determine at trial, so long as the testimony of

7    the plaintiff – if believed – is adequate to render a verdict in his favor on the matter.  *Anderson v.*

8    *Liberty Lobby, Inc.*, 477 U.S. at 248, 252.  Here, plaintiff has presented his sworn statement, as a

9    percipient witness to the meeting, that he informed the defendants of his asthma condition, that

10   they were present and observed an obvious asthmatic attack with breathing difficulty, and in

11   spite of being on notice of that condition no medical assistance was provided until four days

12   later.  If believed, the testimony could be relied upon by a reasonable jury to find for plaintiff on

13   his allegation of deliberate indifference.

14   Next, defendants claim that plaintiff did not sustain any injury after complaining to them

15   about asthma attacks because plaintiff did not experience an asthma attack between March 15

16   and 21, 2005.  Defs.' P. & A. at 6.  Defendants submit one page of handwritten medical notes,

17   dated March 21, 2005, to support the assertion that plaintiff never experienced an asthma attack

18   during this time.  Defs.' MSJ, Ex. F.  But this medical record, viewed in the light most favorable

19   to plaintiff, suggests, at a minimum, that plaintiff was experiencing some form of asthma

20   symptoms on or around March 21st.  The medical record, to the extent legible, states, "Has not

21   had asthmatic attack in 3-4 years  – Has not used inhalers for 3-4 years.  Now very upset can't

22   eat/can't sleep."  *Id.*  This notation is ambiguous.  If read in isolation, it lends support to

23   defendants' claim that plaintiff did not experience an asthma attack between March 15 and 21,

24   2005.  However, it can just as easily be inferred from the notation and the rest of the medical

25   record, that on March 21st, plaintiff was actually treated for an asthma attack, and was "Now

26   very upset," because he had not had an "asthmatic attack in 3-4 years."  *See id.*  Notably, the rest

of the medical records supports a finding that plaintiff was experiencing at least some form of asthma symptoms on or around March 21st.  The medical record references a "cough," a "wheeze," and a "chest scattered."   *See id.*  Under the heading "Dx Plan," it states "Albuterol inhaler/Azmsant."[2]  Thus, regardless of whether plaintiff suffered a true "asthma attack,"which is not defined by the parties, there is evidence that plaintiff experienced asthma symptoms on or around March 21st.  Defendants do not contend that asthma and/or difficulty breathing is not a serious medical condition.

Defendants also submit that there is no evidence that their acts or omissions resulted in plaintiff receiving inadequate medical care for his asthma.  Defs.' P. & A. at 6-8.  Defendants submit evidence that between March 15 and 21, 2005, a correctional officer checked on plaintiff four times a day and during this time, plaintiff never submitted a request for interview regarding his medical care.  Defs.' MSJ, Ex. C ¶¶ 3, 5; Ex. D ¶ 5.  Relying on this evidence, defendants contend that "plaintiff never requested medical care," which "caused him to not receive medical treatment for his asthma."  Defs.' P. & A. at 7-8.

With his opposition, plaintiff submits evidence that from March 15 to 21, 2005, both he and his cellmate orally informed correctional officers on multiple occasions that plaintiff needed medical attention for his asthma.  *See* Pl.'s Decl. ¶ 2 ("[O]n March 15, 2005, I experienced a severe asthma attack.  My cellmate, Gregory Rand, yelled out to the [correctional officers] that I needed immediate medical attention.  The officers replied they would let medical know."); *id.*, ¶ 4 ("[S]ometime that same day or the following, c/o Lee was walking by the cell and Rand explained I was having an asthma attack.  C/O Lee took no action whatsoever and ignored the requests for medical assistance."); *id.*, ¶ 8 ("[F]rom March 15 to 21, 2005, I continued to

---

[2] "Albuterol" is defined as "a beta-agonist bronchodilator that is administered in the form of its sulfate (C13H21NO3)2·H2SO4 as an inhalational aerosol or as a tablet to treat bronchospasm associated especially with asthma and chronic obstructive pulmonary disease — called also salbutamol."  *Merriam Webster's Medical Dictionary*, *available at* http://www.merriam-webster.com /medical/albuterol.

experience severe asthma attacks and made fervent efforts to have the [correctional officers]

contact medical to no avail.").

In light of plaintiff's declaration asserting that he repeatedly sought medical care for his

asthma through requests to correctional officers, there plainly is a disputed issue of fact as to

defendants' assertion that if plaintiff was denied medical care it was because plaintiff failed to

request it.

In their reply brief, defendants argue that even if they caused the four-day delay in the

treatment of plaintiff's asthma, the delay did not cause plaintiff any injury.  Reply at 3.  In

support of this argument, defendants submit a declaration from the Chief Medical Officer at

California State Prison, Solano.  Reply, Ex. A ("Traquina Decl.").  The Chief Medical Officer

states that plaintiff's medical files contain no records indicating that plaintiff suffered any

injuries associated with asthma between March 17 and September 17, 2005. *Id.*, ¶ 8.  The Chief

Medical Officer states further, that when an individual experiences an asthma attack, the

individual must use an inhaled bronchodilator or seek immediate medical attention.  *Id.*, ¶ 5.

The Chief Medical Officer's declaration only highlights that there is a factual dispute as

to whether plaintiff suffered any injuries associated with asthma.  The statements made in the

Chief Medical Officer's declaration are in conflict with the March 21st medical record discussed

above, which noted plaintiff's cough, wheeze, "scattered" chest, and history of asthma.  *See*

Defs.' MSJ, Ex. F.  Further, when viewed in the light most favorable to plaintiff, the Chief

Medical Officer's declaration lends support to plaintiff's claim that he suffered an asthma attack,

as it appears from the March 21st medical record that a doctor prescribed plaintiff Albuterol, i.e.,

an inhaled bronchodilator, on that day.  *See id.*

In light of the above, the court finds that a genuine dispute exists as to whether

defendants were deliberately indifferent to plaintiff's serious medical needs.  Plaintiff submits

evidence that defendants were aware that plaintiff was having trouble breathing and speaking

because of his asthma.  Plaintiff also offers evidence that he informed defendants that he had

1    been experiencing asthma attacks, and that despite his requests over the previous several days, he

2    had not received any medical attention.  Plaintiff's declaration asserts that defendants responded

3    by minimizing his breathing problems and ridiculing him, and that he did not receive any

4    medical care until four days later.  Whether a jury will believe plaintiff's testimony will be seen.

5    But this evidence creates a triable issue of fact as to whether defendants were deliberately

6    indifferent to plaintiff's serious medical needs and is sufficient to defeat summary judgment.

7          Lastly, defendants contend that they are entitled to qualified immunity.  Defs.' P. & A. at

8    8-9. In determining whether a governmental officer is immune from suit based on the doctrine of

9    qualified immunity, the court considers two questions: 1) do the facts alleged show the officer's

10   conduct violated a constitutional right; and 2) was the right was clearly established.  *Saucier v.*

11   *Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009) (courts have

12   discretion to decide which of the two *Saucier* prongs to address first).

13         As indicated above, there are disputed issues of fact regarding whether defendants

14   violated plaintiff's Eighth Amendment rights by acting with deliberate indifference to plaintiff's

15   serious medical needs.  These rights were well established at the time the alleged violations

16   occurred.  *See Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (holding that by 1995 "it

17   was [ ] clearly established that [an] officer[ ] could not intentionally deny or delay access to

18   medical care," and denying qualified immunity to defendant correctional officers on claims they

19   failed to provide medical attention or showers to inmate plaintiffs who complained of breathing

20   problems after being exposed to pepper spray).  Viewing the evidence in the light most favorable

21   to plaintiff, the court finds that defendants are not entitled to summary judgment on the question

22   of qualified immunity.

23   ////

24   ////

25   ////

26   ////

**V.      Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that defendants' October 15, 2010 motion for summary judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 23, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE